ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney
CHRISTINE CHEN (CABN 327581)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Christine.Chen@usdoj.gov
    Wendy.Garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:24-mj-71065 MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| MINGTAO CHEN, | |
| Defendant. | |

## I. INTRODUCTION

Defendant Mingtao Chen is an instrumental player in a larger scheme in which victims (typically elderly) are scammed into wiring or otherwise transferring thousands of dollars into bank accounts that the defendant opened using counterfeit Chinese passports. Chen's role in this scheme is to withdraw the fraudulently obtained money in cash. The scheme has resulted in dozens, if not hundreds, of duped victims, from across the United States. Initial estimates indicate that Chen is personally responsible for moving approximately $2 million of victims' money.

Chen has a track record of assuming false identities and opening fraudulent bank accounts. The government is aware of Chen opening at least 11 bank accounts using false aliases—there are likely

others of which the government is not aware. Chen is a Chinese national with minimal ties to the United States. He does not have family here, he does not have a legitimate job here, and he has not attended school here. His primary connections are other conspirators in the Bay Area who could help him flee, either back to China, where his family lives, or to other parts of the United States. Facing justice for the first time, Chen has an increasing incentive to flee as his sentencing exposures grow with each new scam uncovered by agents. That incentive to flee, coupled with the ability and means to do so, creates a serious risk of flight. In fact, prior to his arrest, Chen made concrete plans to flee. He was arrested before he could carry them out. Accordingly, Chen should be detained pending trial.

## II.   FACTUAL BACKGROUND

The government proffers facts herein in support of the argument that the Defendant poses a serious risk of flight and is a danger to the community.[1]

### A. The Overall Scheme

On July 15, 2024, the Court signed a criminal complaint, charging defendant with false use of passport in violation of 18 U.S.C. § 1543—relating to the opening of bank accounts using false Chinese passports—and false statement to a bank in violation of 18 U.S.C. § 1014—relating to the withdrawal of cash from other fraudulent accounts, also under false names.

These counts arise from the above-described scheme involving Chen and unidentified co-conspirators. As an example of the scheme, Chen opened an account at Bank of America under the false name "Zhihui Zhang" with an inauthentic Chinese passport with the same name, on January 5, 2024. The account was assigned a number ending in x2670.

In November 2023, Victim L.C. received pop-up screens on her computer indicating that her computer was infected with malware. The pop-up displayed a number to call. L.C. called the number and a female, who identified herself as "Cynthia" answered. "Cynthia" claimed to be from Microsoft.

---

[1] The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The Rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* Fed. R. Evid. 1101(d)(3) (exception to application of federal evidence rules for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise."). Defendants at pretrial detention hearings are expressly authorized by the Bail Reform Act of 1984 to "present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B). Because the Act ratified existing practice, the government is likewise authorized to present information by proffer.

"Cynthia" gave her badge number as 4433 and transferred L.C. to "Justin Clark." "Justin Clark" claimed that he was a representative of the Department of Treasury and recommended that Victim 2 open up cryptocurrency accounts in order to keep her funds safe. L.C. told "Justin Clark" that she didn't know anything about cryptocurrency, and "Justin Clark" told her that he would help her. Over the following weeks, "Justin Clark" would routinely call L.C. and remind her about "securing" her funds. "Justin Clark" also instructed L.C. to downloand the AnyDesk mobile phone application on her phone. AnyDesk is a software program that, once installed, allows remote access to a digital device. Criminals often utilize AnyDesk to gain access to victims' sensitive information.

In January 2024, L.C. received a phone call from "Edward Scott" and "Jonathan Walker." "Edward Scott" and "Jonathan Walker" claimed that they were law enforcement officials and that L.C. was subject to an arrest warrant issued in Texas related to a rental vehicle. "Edward Scott" and "Jonathan Walker" demanded that L.C. wire $98,000 to avoid being arrested on the warrant. They instructed her to wire the money to a bank account under the name "Zhihui Zhang." On or about January 16, 2024, L.C. wired the $98,000 to the Bank of America account under the name "Zhihui Zhang" ending in x2670, which Chen had opened about a week prior. On January 17, 2024, Chen, posing as "Zhihui Zhang," withdrew $35,000 from this account, that same day, Chen, posing as "Zhihui Zhang" withdrew another $40,000 from this account.

It is evident that Chen is part of a much larger ring in the Bay Area and beyond. In addition to the scammers in direct communication with victims and others individuals who assisted in laundering the victims' money, there is at least one person in China who is facilitating the creation and transport of fraudulent passports.

**B. The Defendant**

Chen is a Chinese national. Chen originally entered the United States in January 2017 on a tourist visa. He appears to have no children, family, or legitimate, steady job in this District, nor is he attending school here. Rather, Chen appears to spend the bulk of his time on fraudulent activity . It appears that the vast majority, if not all, of his income comes from participating in criminal activity. In addition to the charged conduct, Chen has participated in other criminal activity, including setting up brothels and other financial fraud.

### III. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk—the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### IV. ARGUMENT

#### A. There Is a Substantial Risk Defendant Will Either Flee the United States or the Bay Area

The defendant's conduct demonstrates that he is a risk of flight. *See, e.g.*, *United States v. Arias*, No. CR 20-1265-001 KG, 2020 WL 3639746, at *4 (D.N.M. July 6, 2020) (finding reflecting transnational criminal activity and actual flight from law enforcement supported serious risk of flight). Chen had concrete plans to flee the United States with his co-conspirator Jiawei Yu. The pair planned to cross the border in Tijuana, Mexico, and then fly to Beijing on August 17, 2024. They picked the route because they were concerned that flying out of San Francisco or Los Angeles could alert the U.S. authorities. In other words, Chen was fleeing because he was worried about being on law enforcement's

radar and being held responsible for his criminal conduct.

Chen has the ability and means to flee. When he was arrested, agents found approximately $27,790 in cash in his house. His prolific use of false identities and false passports demonstrate that he is adept at concealing his true identity and that he has easy access to additional, fake passports. Chen has also been assisted by his associates in obstructing law enforcement. While agents were waiting for the search warrant for his residence to be signed, individuals began carrying boxes and a bag out of the residence. It would be easy for Chen to go on the run to other parts of the United States or to China (which does not have an extradition treaty with the United States). Simply taking Chen's legitimate passports and imposing a bond will not adequately assure his future appearances in Court. *See United States v. Zaragoza*, No. CR-08-0083 PJH, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (finding that defendant's "use of false identification and his attempts to seek the participation of other individuals in the use of false names," in part, supported detention based on flight risk).

Chen also likely has access to additional resources unknown to law enforcement. Despite Chen having moved millions of dollars, law enforcement seized only $27,790 from his residence. Agents have seemingly only scratched the surface of the web of accounts and financial resources available to Chen. Review of his phone is likely to reveal additional bank accounts or crypto accounts that were previously unknown to law enforcement.

In addition, Chen lacks ties to the Bay Area. He has no spouse, children or other family to tie him here. He has no legitimate employment. What he does have is charged and uncharged co-conspirators here and elsewhere in the United States and China, who can help him assume false identities in other parts of America or flee to China. Chen may claim that he has no desire to go back to China, but his plans to return to China on August 17, 2024 belie that claim.

Finally, the charges against Chen are serious. Chen faces up to 10 years of imprisonment for the false use of passport charge and up to 30 years of imprisonment for the false statement to bank charge. This is a daunting amount of time for Chen, who has no criminal history. Moreover, the weight of the evidence against defendants is very strong—he was captured on surveillance camera using the false passports to open and access bank accounts. Thus, in addition to having the means and ability to do so, Chen now has the incentive to flee. Having never served time in prison, he has every motivation to

avoid being held to account.

**B.     The Defendant is a Danger to the Community**

The Ninth Circuit has considered economic danger to the community in assessing detention. *See United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992); *see also United States v. Posey*, No. 18-CR-00408-CRB-1, 2020 WL 2838793, at *1 (N.D. Cal. June 1, 2020) ("economic danger may be a reason to deny pretrial release"); *United States v. Kakkar*, No. 5:13-CR-00736-EJD, 2017 WL 4163291, at *2 (N.D. Cal. Sept. 20, 2017) ("The court therefore concludes that Defendant will continue to constitute an economic danger to the community if permitted release."). In *United States v. Lindsey*, in which the defendant "targeted vulnerable and impoverished individuals," used stolen identities and "profited" while his victims "were left with ruined credit," the Ninth Circuit held that the defendant "is a danger to individuals and the community" and affirmed the denial of bail pending appeal. 680 F. App'x 563, 567–68 (9th Cir. 2017).

Here, Chen poses a serious risk of economic harm to the community if released pending trial. As described above, Chen is responsible for moving millions of dollars that were fraudulently taken from victims around the United States. The vast majority, if not all, of his income appears to come from illegitimate sources. Thus, the likelihood that he would return to his criminal ways is high, creating serious danger to new victims. His participation in other criminal conduct, including the operation of brothels[2] and other financial scams, further supports that the defendant poses a danger to the community. Although the brothel activity is not charged here, the government is concerned about the well-being of the women who are working at these brothels.

---

[2] When agents executed the search warrant at Chen's residence on July 15, 2024, they found thousands of condoms.

## V. CONCLUSION

The government respectfully submits that it has sufficiently shown by a preponderance of the evidence that Chen poses a serious risk of flight, and by clear and convincing evidence that he is an economic danger to the community. Chen should be detained pending trial.

DATED: July 22, 2024                                    Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


*/s/ Wendy M. Garbers*
WENDY GARBERS
Assistant United States Attorney
CHRISTINE CHEN
Special Assistant United States Attorney